UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALEAK ROBERT CHANDLER,<br>          Plaintiff,<br><br>          v.<br><br>MICHAEL PITTARO, *NEW DIRECTOR OF CORRECTIONS*; JAMES C. KOSTURA, *DIRECTOR OF CORRECTIONS*; DAVID J. PENCHISHEN, *WARDEN OF NORTHAMPTON COUNTY PRISON*;<br>          Defendants. | :<br>:<br>:<br>:  No. 5:24-cv-3502<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**O P I N I O N**
**Defendants' Motion for Judgment on the Pleadings, ECF No. 19 – Granted**

**Joseph F. Leeson, Jr.**                                                                                           **August 19, 2025**
**United States District Judge**

## I.   INTRODUCTION

This case involves several alleged civil rights violations under 42 U.S.C. § 1983, committed against Mr. Chandler, a pretrial detainee, by defendants associated with the Northampton County Prison. The claims relate to the conditions of the prison in which Mr. Chandler was housed, instances of alleged retaliation against Mr. Chandler, excessive force complaints, and violations of his ability to practice his religion. Currently before the Court is the prison officials' Motion for Judgment on the Pleadings. For the reasons set forth below, Defendants' Motion is granted.

## II. BACKGROUND

### A. Procedural History

Plaintiff, Waleak Robert Chandler, filed his initial Complaint with this Court on July 29, 2024. ECF No. 2. Following his initial filing, this Court issued a Memorandum granting Mr. Chandler leave to proceed *in forma pauperis* while also dismissing his Complaint in part with prejudice and in part without prejudice, and allowing him leave to file an amended complaint. Mem., ECF No. 5. On October 07, 2024, Mr. Chandler filed his Amended Complaint as to those claims that were not dismissed with prejudice. Am. Compl., ECF No. 7. The claims Mr. Chandler makes can be categorized into Fourteenth Amendment[1] violations on the basis of excessive force, retaliation, and conditions of confinement. *Id.* He also makes a claim that can be categorized under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *Id.*

Mr. Chandler names the following Defendants in his Amended Complaint: (1) Michael Pittaro, New Director of Corrections; (2) James C. Kostura, Director of Corrections; and (3) David J. Penchishen, Warden of Northampton County Prison. *See* Am. Compl. at 13, 15. Defendants filed their Answer to the Amended Complaint on January 13, 2025, in which they raise twenty-one affirmative defenses. *Id.* at 5-8. On February 14, 2025, Defendants filed with this Court a Motion for Judgment on the Pleadings as to all claims. Mot., ECF No. 19. Mr. Chandler submitted his Response to the Motion for Judgment on the Pleadings on May 28, 2025, followed by Defendants' Reply on June 02, 2025. ECF Nos. 26-27.

---

[1] Mr. Chandler is currently, and was at the time of the events, a pretrial detainee housed at Northampton County Prison, where he has been incarcerated for charges of Terroristic Threats – 18 Pa. C.S. § 2706(a)(1), Person Not to Possess Firearms – 18 Pa. C.S. § 6105(a)(1), and Recklessly Endangering Another Person – 18 Pa. C.S. § 2705. *See* Answer at 2-3, ECF No. 13.

B.     **Factual Allegations**

The factual allegations are as follows:

Mr. Chandler alleges that from July of 2023 to September 28, 2024, the Warden, Mr. Penchishen: Neglected his responsibilities by "not making personal inspections." Am. Compl. 13.[2] He failed to "change, make note of, or observe the lack of sprinklers and ventilation. . ." in some cells in the prison. *Id.* He failed to discipline corrections officers and staff who used "obessive [sic[3]] force towards inmates." *Id.* at 13, 15. He allegedly used excessive "confinement in detention and administrative segregation" in retaliation for Mr. Chandler making formal complaints. *Id.* at 15-16. He hired inadequately trained staff members. *Id.* at 15. He failed to address reports of safety issues. *Id.* at 15.

The claims against Mr. Pittaro and Mr. Kostura, the Director and former Director of Corrections respectively, include the following: They allowed unqualified staff to run the day-to-day operations of the prison. *Id.* at 15, 17. They permitted the use of "obsessive [sic] force" towards Mr. Chandler and other inmates. *Id.* at 15, 17-18. They failed to provide clean and safe cells, housing units, and recreation areas for Mr. Chandler and others. *Id.* at 15, 17. They used "extreme temperature" as a punishment. *Id.* They allowed constant banging and yelling by prisoners with mental health conditions. *Id.* They maintained twenty-four (24) hour lighting in cells of certain housing units. *Id.* Mr. Chandler alleged that the dirty cells, constant yelling, and twenty-four-hour lighting kept him from freely practicing his religion. *Id.* at 17. They refused to hire trained professional personnel. *Id.* at 14. They neglected to provide certain programs,

---

[2]     This Opinion refers to the page numbers assigned by the Court's electronic filing system ("ECF").
[3]     For purposes of this Opinion "obsessive force" will be taken to mean excessive force.

religious or otherwise. *Id.* They denied phone and visitation privileges. *Id.* at 18. 11. They retaliated against Mr. Chandler in response to his lawsuit against prison. *Id.* [4]

Based on these allegations, Mr. Chandler asserts constitutional claims and seeks monetary damages in the amount of $2,500 per day of confinement, in addition to the cost of medical and legal fees. *Id.* at 5. He requests similar compensation on behalf of his wife and three children for the alleged hardship.[5] *Id.* Mr. Chandler makes no mention of any particular injuries or specific medical costs that he incurred, instead his Amended Complaint only makes nonspecific reference to "minor injuries."

## III.   LEGAL STANDARDS

### A.   Motion for Judgment on the Pleadings – Review of Applicable Law

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "In deciding a motion for judgment on the pleadings under Rule 12(c), the Court considers the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, matters of public record, and indisputably authentic documents attached to the motion—provided the claims are based on these documents." *Doe v. Archdiocese of Phila.*, No. 20-3024, 2021 U.S. Dist. LEXIS 38426, at *6-7 (E.D. Pa. Mar. 2, 2021). *See also*

---

[4]   The Amended Complaint also alleges that after Mr. Pittaro became the Director, Mr. Chandler was told he had to give up his bottom bunk even though he was assigned a bottom bunk based on his medical condition (seizures). *See* Am Compl. 18. Mr. Chandler was told by medical staff that he had the option to either move to a top bunk or be placed in detention segregation. *Id.* His clothes were cut off on August 7, 2024, and when he tried to address the issue, he was denied his remedy process and denied phone and visitation privileges, which was allegedly in retaliation for the instant lawsuit. *Id.* His allegations in regard to August 7 are unclear.

[5]   As Mr. Chandler's wife and children are not named parties in either his Complaint or Amended Complaint he cannot bring a loss of consortium claim, which carries its own elements, on their behalf.

*Vacanti v. Apothaker & Assocs., P.C.*, No. 09-5827, 2010 U.S. Dist. LEXIS 120109, at *6 (E.D. Pa. Nov. 12, 2010) (explaining that the notable difference between the standard under 12(b)(6) and 12(c) is "that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings" (internal quotations omitted)). "Judgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law. [The court] must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (internal citations omitted).

    B.    **Section 1983 Claims – Review of Applicable Law**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution, and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The first step for the court analyzing a claim under § 1983 "is to identify the exact contours of the underlying right said to have been violated." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). The court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Id.*). Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). The court must also determine whether a defendant is acting under color of state law, i.e., whether the defendant is a state actor, which depends on whether there is "such a 'close nexus between the State and the challenged action'

that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).

Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.* "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A plaintiff in a § 1983 case must also assert that he was actually injured by the violation. *See Bolden v. Se. Pa. Transp. Auth.*, 21 F.3d 29, 34 (3d Cir. 1994) (holding that there is a right to damages above nominal ones unless actual injury is proven (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986)).

   1. **Supervisory liability**

There are two theories of liability under which a supervisory defendant may be personally liable: (1) the defendant-supervisor participated in violating the plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations; and (2) the defendant, in his role as policymaker, acted with deliberate indifference in establishing and maintaining a policy, practice, or custom which directly caused the plaintiff's constitutional harm. *See A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the knowledge and acquiescence theory,"[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances

surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Actual knowledge cannot be derived solely from grievances filed with the defendant's office. *See Rode*, 845 F.2d at 1208.

When relying on policy or custom pursuant to the second theory, the plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001). "[P]roof of the mere existence of an unlawful policy or custom[6] is not enough to maintain a § 1983 action." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). A plaintiff must "specifically identify the acts or omissions of the supervisors that show deliberate indifference, and suggest to the Court a relationship between the 'identified deficiency' of a policy or custom and the injury suffered." *Cain v. Nutter*, No. 16-1614, 2016 U.S. Dist. LEXIS 166071, at *7 (E.D. Pa. Nov. 30, 2016). Failure to claims, such as failure to train, failure to discipline, and failure to supervise are generally considered a subcategory of policy or practice liability. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

C.  **Fourteen Amendment - conditions of confinement - Review of Applicable Law**

"[W]hen pretrial detainees challenge their conditions of confinement, [the court] must consider whether there has been a violation of the Due Process Clause of the Fourteenth

---

[6]    *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (holding that a plaintiff "may establish that a course of conduct constitutes a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' that they operate as law" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978))

Amendment." *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008). "In evaluating the constitutionality of conditions or restrictions of pretrial detention . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Id.* "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether 'the deprivation [was] sufficiently serious and the subjective component asks whether 'the officials act[ed] with a sufficiently culpable state of mind[.]'"" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A condition amounts to punishment if "the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective." *Id.* "In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution." *Id.*

        **D.**        **Fourteen Amendment - excessive force - Review of Applicable Law**

Excessive force claims brought by convicted prisoners are analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause, while claims brought by pretrial detainees are analyzed under the Fourteenth Amendment'' Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015).[7] The distinction is significant because the "language of the two Clauses differs, and the nature of the claims often differs." *Id.* at 400. When a prison official stands accused of using excessive force in violation of the Eighth Amendment, the question[8] is "whether force was applied in a good-faith effort to maintain or restore discipline, or

---

[7]    *See also Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193 (3d Cir. 2021) ("The Fourth Amendment protects citizens from objectively unreasonable uses of force in the context of arrests, investigatory stops, or any other seizure." (citing *Graham*, 490 U.S. at 395-97).

[8]    In answering this question, courts consider: (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used," (3) "the extent of injury inflicted," (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them," and (5) "any

maliciously and sadistically to cause harm." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The malicious-and-sadistic standard for an Eighth Amendment claim is subjective, but an objective standard is applied to a Fourteenth Amendment claim. *See Kingsley*, 576 U.S. at 400 (explaining that the reason for the lesser standard in a Fourteenth Amendment claim is that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'"); *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 194 (3d Cir. 2021). To state a Fourteenth Amendment claim, a plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable." *See Kingsley*, 576 U.S. at 396-97.

E. **Retaliation – Review of Applicable Law**

"To establish a claim of retaliation . . ., [the plaintiff] must show that (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action." *Freeman v. Dep't of Corr.*, 447 F. App'x 385, 387-88 (3d Cir. 2011) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). "To make out a viable retaliation claim, the alleged retaliatory action must be sufficiently adverse to deter a person of ordinary firmness from exercising his [constitutional] rights." *Bullock v. Buck*, 611 F. App'x 744, 747 (3d Cir. 2015) (internal citations and quotations omitted). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Once a plaintiff establishes a prima facie case, the burden

---

efforts made to temper the severity of a forceful response." *See Whitley v. Albers*, 475 U.S. 312, 321 (1986).

shifts to the defendant to show that the same disciplinary action would have been taken even in the absence of protected activity. *See Rauser*, 241 F.3d at 333.

      **F.**      **RULIPA – Review of Applicable Law**

"Congress passed RLUIPA to grant heightened protection to prisoners from burdens imposed by the government." *Washington v. Klem*, 497 F.3d 272, 276 (3d Cir. 2007). RLUIPA provides that the government shall not ". . . impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government "demonstrates that the application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *See* 42 U.S.C. § 2000cc-1. To demonstrate a substantial burden exists a plaintiff must demonstrate they were forced to choose between practicing their religion and forfeiting benefits generally available to other prisoners versus abandoning some element of their religion to receive the benefit; or the government applied substantial pressure on the inmate to drastically modify their behavior and violate their beliefs. *See Washington*, 497 F.3d at 280 (outlining the elements required to show a substantial burden was applied).

**IV.**      **ANALYSIS**

      **A.**      **The allegations fail to show each Defendant's personal involvement.**

Mr. Chandler's allegations state that Defendants were in positions of authority at the prison, and thus are vicariously liable, which is inapplicable in § 1983 suits. *See Iqbal*, 556 U.S. at 676. As supervisors, Defendants may be liable if they participated in violating Mr. Chandler's rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations. *See A.M.*, 372 F.3d at 586. However, Mr. Chandler fails to sufficiently allege that

either the Warden or the current or former Director of Prisons were personally involved, through participation or direction, in any of the alleged constitutional violations. Although the Amended Complaint includes broad and conclusory allegations that the claims against the Warden include "obsessive confinement in detention and administrative segregation" and "administrating the use of obsessive [sic] force as a means of retaliation," Am. Compl. 15, there are no allegations that the Warden actually used or directed such detention and force, or any specific allegations regarding the same. *See Rode*, 845 F.2d at 1207 ("Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."). The allegations against the Director and former Director of Corrections similarly lack the required particularity. *See* Am. Compl. 15 (stating that the claims against the Director and former Director include using "extreme temperature" as a punishment, and twenty-four (24) hour lighting in cells of certain housing units). Liberally construing the allegations, this Court finds that Mr. Chandler also alleges that Defendants had knowledge of and acquiesced in certain violations. *See* Am. Compl. 13 (alleging that the Warden failed to discipline "those staff reported to use obsessive [sic] force towards inmates"); 15 (stating that the claims against the Director and former Director of Corrections include "allowing or thus approving of the constant use of obsessive [sic] force" towards Mr. Chandler and other inmates). However, conclusory allegations of knowledge and acquiescence are insufficient. *See Chavarriaga*, 806 F.3d at 222 (finding that the plaintiff's allegations did not describe the defendants' "conduct in sufficient detail to support her conclusory allegations that they had either actual contemporaneous knowledge of or any personal involvement in any violation of her constitutional rights"); *Shaw v. Nutter*, No. 15-1209, 2017 U.S. Dist. LEXIS 31899, at *10-12 (E.D. Pa. Mar. 6, 2017) (determining that the plaintiff, who alleged that he sent multiple letters and spoke with the

warden and commissioner about overcrowding, failed to show their knowledge and acquiescence to support the triple-celling claim).

The allegations are also insufficient to establish supervisory liability of Defendants for establishing and maintaining a policy, practice, or custom that directly caused Mr. Chandler's constitutional harm. *See A.M.*, 372 F.3d at 586. Mr. Chandler's claims do not make any mention of a custom or policy put forth by any of the Defendants which led to his rights being violated. To the extent his allegations can be construed as presenting a failure-to-train claim, *see* Am. Compl. 15 (alleging the Warden and Directors, respectively, hired inadequately trained staff and allowed unqualified staff to run the day-to-day operations of the prison), the allegations lack sufficient particularity. *See Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991) (holding that a plaintiff presenting a failure-to-train claim "must identify a failure to provide *specific* training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that *specific* training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur" (emphasis added)); *Khan v. City of Paterson*, No. 17-5006, 2019 U.S. Dist. LEXIS 61247, at *9 (D.N.J. Apr. 9, 2019) (finding that the plaintiffs' conclusory allegations of polices, customs, and practices did not allege sufficient facts that plausibly pled a policy or custom).

All § 1983 claims may therefore be dismissed for Defendants' lack of personal involvement. Nevertheless, this Court also considers the merits of the claims.

**B.   The excessive force claims are conclusory.**

Mr. Chandler alleges in a conclusory manner, in his Amended Complaint, that he was subjected to excessive force while incarcerated at Northampton County Prison. To state a Fourteenth Amendment claim of excessive force, a pretrial detainee must show that the force

"purposefully or knowingly used against [him] was objectively unreasonable." *See Kingsley*, 576 U.S. at 400-01 (explaining the objective standard used to determine the presence of excessive force when claimed by a prisoner in pretrial confinement under the Fourteenth Amendment).

Being a *pro se* litigant, the Court is required to construe Mr. Chandler's claims liberally; however, his allegations must include at least some factual content that allows the Court to draw a reasonable inference that excessive force occurred. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (holding that a complaint that contains "naked assertions" that are devoid of "further factual enhancement" will not suffice). In all of Mr. Chandler's claims he fails to state any facts supporting that the force used against him by prison employees was objectively unreasonable, and instead makes only the bare conclusion that the force used was excessive. *See, e.g.* Am. Compl. 15 (alleging that the Warden administered "the use of obsessive [sic] force as a means of retaliation").[9] The allegations do not identify any specific incident, the date on which the allegedly excessive force was used, the type of force used, who applied the force, against whom the force was applied, or any allegations from which this Court can determine if the force allegedly used was reasonable or not.

For these reasons, Mr. Chandler fails to state a claim for which relief can be granted based on the alleged use of excessive force.

### C.  The retaliation claims failed to allege a causal link to protected activity.

Mr. Chandler broadly alleges that the Warden retaliated against him by the use of excessive force. *See* Am. Compl. 15. This allegation is insufficient because it does not link the

---

[9]   This allegation is so broad that it cannot be concluded whether the "obsessive [sic] force" in question was allegedly used against Mr. Chandler or another inmate. No other inmates are named in the above-captioned action. Moreover, Mr. Chandler is not an attorney and although he may represent himself in federal court, he may not represent other parties. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998).

alleged retaliation to any constitutionally protected activity, or any activity for that matter. *See Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation."). Mr. Chandler also alleges that he was repeatedly placed in segregation and denied privileges for making complaints to prison officials. *See* Am. Compl. 16. Case law states that a prisoner does not have a constitutionally protected right to an internal grievance process. *See Wilson v. Horn*, 971 F. Supp. 943 (E.D. Pa. 1997) (emphasizing that any state creation of a grievance procedure does not create any federal constitutional rights). However, if a grievance process is already in place and it is being utilized by a prisoner to file written complaints this constitutes protected activity. *See Mack v. Loretto*, 839 F.3d 286, 293 (3d Cir. 2016) (noting that filing a formal grievance constitutes protected activity). This allegation nevertheless fails to state a valid claim because Mr. Chandler does not allege any facts concerning the timing or recipient of his complaints. He failed to include facts which could demonstrate that this protected activity was a deciding factor which prompted the Warden, specifically,[10] to take adverse action. There are no allegations the Warden received or was aware of Mr. Chandler's complaints, or was aware of, acquiesced in, or directed his placement in segregation or the denial of privileges. *See Hammonds v. Headman*, 645 F. App'x 149, 152 (3d Cir. 2016) (finding that the retaliation claim failed to state a claim where the plaintiff did not allege that the defendants who took the alleged retaliatory action were even aware of his grievance). Accordingly, the conclusory allegations are insufficient to state a retaliation claim against the Warden. *See Carvalho-Grevious v. Del. State*

---

[10] Mr. Chandler only makes mention of a corrections officer, David Collins, who allegedly told Mr. Chandler that his privileges would not be returned until he stopped writing reports, *see* Am. Compl. 16, which does not tie any of the Defendants to the allegedly retaliatory actions.

*Univ.*, 851 F.3d 249, 253 (3d Cir. 2017) (holding that the allegations must be "sufficient to raise the inference that [the plaintiff's] engagement in a protected activity was the likely reason for the [retaliatory] action"); *McKnight v. McDowell*, No. 24-CV-0143, at *11 (E.D. Pa. May 13, 2024) (finding that the plaintiff's "allegations that [the defendant] changed his housing in retaliation for him having filed grievances are entirely conclusory").

In his claims against Mr. Pittaro and Mr. Kostura, Mr. Chandler alleges that he was retaliated against due to his lawsuit against the prison. *See* Am. Compl. 18. Mr. Chandler asserts that because of this lawsuit he was denied phone and visitation privileges in retaliation. He also complains that after Mr. Pittaro became the Director, Mr. Chandler was told he had to give up his bottom bunk or be placed in detention segregation. While prisoners have a constitutional right to access the courts, Mr. Chandler's claim fails to establish the required causal link by demonstrating either an "unusually suggestive temporal proximity" between the protected activity and the retaliatory action or "a pattern of antagonism coupled with timing to establish a causal link." *See Lauren W.*, 480 F.3d at 267. Nowhere in Mr. Chandler's Amended Complaint does he state any facts which could be used to establish this link. Instead, he alleges that the retaliation occurred in response to his legal proceedings without providing any information regarding the timing of either event that could establish the causal connection via temporal proximity. Notably, Mr. Pittaro became director in December of 2023, but the instant action was not initiated for another eight months, on July 29, 2024. The retaliation claim against Mr. Kostura, who was no longer the director when the protected activity occurred, is therefore frivolous. *See Lopez v. Kuhn*, No. 23-2603, 2023 U.S. Dist. LEXIS 132920, at *5 (D.N.J. Aug. 1, 2023) ("There can be no First Amendment retaliation claim before a plaintiff engages in constitutionally protected conduct that provokes an adverse action. This claim is dismissed for

failure to state a claim."). Mr. Chandler's bare allegations against Mr. Pittaro is also insufficient to show a causal link. *See id.*

In his claims of retaliation, Mr. Chandler fails to demonstrate either that he was engaging in a protected activity at all or that when engaging in a protected activity there was a causal connection between his conduct and the prison's response. Instead, Mr. Chandler's assertions are entirely conclusory, and he fails to state a claim for which relief can be granted.

**D.     The conditions-of-confinement claim lacks sufficient particularity.**

To determine whether conditions of confinement violate the Due Process Clause of the Fourteenth Amendment the conditions must be such that they amount to punishment of the detainee. *See Hubbard*, 538 F.3d at 231. In his Amended Complaint, Mr. Chandler makes several vague assertions about the conditions of his confinement, but none rise to the level of unconstitutional punishment. *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) (holding that "the Constitution does not mandate comfortable prisons, and prisons . . . cannot be free of discomfort"). Mr. Chandler alleges that the housing units lacked sufficient sprinklers and vents in the cells, *see* Am. Compl. at 13, 15, but he provides no context on how these conditions posed a serious risk to his health or safety, or how they amounted to punishment (objective component).[11] *See Brown v. Berks Cty. Jail*, No. 23-0780, 2023 U.S. Dist. LEXIS 80653, at *9 (E.D. Pa. May 9, 2023) (concluding that the pretrial detainee failed to state a conditions-of-confinement claim under the Fourteenth Amendment based on allegations of standing water, mold in a shower stall, and a dirty ventilation system that blew dust out of the air vents).

---

[11]     While Mr. Chandler makes several additional allegations, none amount to a cognizable legal claim entitling him to relief. These include, but are not limited to, complaints concerning the general lack of cleanliness in the prison and the lack of certain programs. The Court acknowledges these allegations but declines to discuss them further, as they do not implicate any constitutional rights. Additionally, they lack sufficient factual support to state a claim.

Moreover, in their Answer to the Amended Complaint, Defendants state that Northampton County Prison complies with all applicable health, safety, and fire codes required of them. *See* Answer 3, ECF No. 13. He also fails to allege that the Warden was aware of these conditions (subjective component). *See Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (agreeing with the district court that the conditions of confinement claim failed because the evidence did not provide a sufficient basis to conclude that the individual defendants had knowledge of the inmate's conditions of confinement).

In his claims against the Director and former Director, Mr. Chandler alleges that the temperatures were excessive, that constant yelling and banging by special needs inmates was permitted, and that the lights in "certain units" were left on twenty-four hours a day. *See* Am. Compl. at 13. These allegations fail to satisfy either the objective inquiry component, demonstrating the deprivation was sufficiently serious, or the subjective inquiry component, demonstrating the culpable state of mind of the official. *See Stevenson*, 495 F.3d at 68; *Washington v. Myers*, No. 4:22-CV-01858,, at *8 (M.D. Pa. May 15, 2023) (finding the pretrial detainee's allegations that "other inmates in the BMU were making continuous noise during the 6 a.m. to 2 p.m. shift and disrupting his sleep. . . is both implausible and legally insufficient"). Mr. Chandler, who fails to allege how long the conditions existed or even that the conditions impacted his housing unit, does not provide sufficient factual content to show whether the alleged deprivations were sufficiently serious to be a violation of the Due Process Clause. He makes only conclusory allegations that the temperatures were extreme in the housing unit, failing to state whether they were too hot or too cold, and he also neglects to mention anything that would indicate the Defendants intentionally maintained those temperatures as a punitive measure. *See Washington v. Superintendent Salamon*, No. 4:21-CV-01746,, at *7 (M.D. Pa. Sep.

7, 2022) (dismissing the conditions-of-confinement claim based on the prisoner's allegations "that he experienced unclean drinking water, improper ventilation, constant lighting in his cell, cold temperatures, and rainwater leaking into his cell . . . because he does not adequately plead facts showing when he was subjected to these conditions, how long he experienced them, if he experienced the conditions at the same time or on separate occasions, or whom he informed (if anyone) about most of the issues").

The conditions-of-confinement claim is insufficient.

### E.     The RLUIPA claim lacks factual support.

In his Amended Complaint, Mr. Chandler asserts that due to the temperature in the housing units, the twenty-four-hour lighting, and the mentally ill prisoners yelling and banging. he was unable to freely practice his religion. *See* Am. Compl. 17. To state a valid claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), a plaintiff must demonstrate that the government imposed a *substantial* burden on their practice of religion. *See* 42 U.S.C. § 2000cc-1.  In this case, Mr. Chandler does not make any connection between the asserted conditions in the prison and his ability to practice his religion free of substantial burdens.  *See Washington*, 497 F.3d at 277 (holding that to state a claim under RLUIPA, the plaintiff must show that the defendant impose "a *substantial burden* on the religious exercise of a person residing in or confined to an institution" (emphasis added)).  Without alleging any such connection or pleading any suggestion as to how he was forced to choose between practicing his religion and forfeiting benefits generally available to other prisoners or how he was pressured to drastically modify his (unspecified) behavior, Mr. Chandler fails to state a claim for which relief can be granted on the grounds of the RLUIPA.

## V.     CONCLUSION

Mr. Chandler fails to allege any facts demonstrating a violation of a constitutional right or federal law. His allegations are conclusory and lack sufficient detail to state a plausible claim. Once again,[12] Mr. Chandler does not allege that any of the named Defendants were personally involved in any of the conduct at issue. Because of the deficiencies in his Amended Complaint, Mr. Chandler fails to state a claim for which relief can be granted. Defendants' Motion for Judgment on the Pleadings is granted in its entirety, judgment is entered in favor of Defendants, and all claims are dismissed with prejudice.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[12]     In an Opinion dated September 10, 2024, this Court explained that Mr. Chandler's conclusory allegations were insufficient to state a claim because he "provide[d] no details about those conditions [of confinement], including when each occurred and who was involved." *See* Mem. 7.  He did "not allege how any of the four named Defendants – Pittaro, Kosturo, Penchishen, or Bartholomew – were personally involved in subjecting him to the conditions he endured while placed in segregated housing." *See id.* (explaining that to the extent the Defendants are named "simply due to their high-ranking positions in the Northampton County Department of Corrections, this is not sufficient to state a plausible claim").  Because Mr. Chandler was previously given leave to amend, any further amendment would be both futile and inequitable.  *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that a court may deny leave to amend if a complaint is vulnerable to 12(b)(6) dismissal, if an "amendment would be inequitable or futile"); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (holding that leave to amend may be denied "based on . . . repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment").